IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARBARA A. ADAMS,           §
                            §
        Plaintiff,          §
                            §
V.                          §           No. 3:17-cv-723-B-BN
                            §
U.S. BANK, N.A., ET AL.,    §
                            §
        Defendants.         §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Jane J. Boyle. *See* Dkt. No. 28.

Plaintiff Barbara A. Adams has filed a Motion to Remand Removed Action, *see* Dkt. No. 8, to which Defendants U.S. Bank National Association, ("U.S. Bank") has filed a response, *see* Dkt. No. 18.

Defendants Guild Mortgage Company ("Guild") and Cheldan Home, L.P. ("Cheldan") have not filed a response, Plaintiff has not filed a reply, and their deadlines to do so have passed.

The undersigned now concludes that Plaintiff's Motion to Remand Removed Action [Dkt. No. 8] should be denied.

**Background**

On March 13, 2017, Ms. Adams initiated this lawsuit by filing her Original

Petition and Application for Temporary Restraining Order (the "State Court Petition") in County Court at Law No. 1, Dallas County, Texas. She seeks injunctive relief to preclude the foreclosure sale of real property located at 300 Parakeet Drive, Desoto, Texas 75115 (the "Property"), monetary damages, and other forms of relief.

Ms. Adams brings claims against U.S. Bank for violation of the Texas Debt Collection Act, violation of the Texas Property Code, and breach of contract. *See* Dkt. No. 1-5 at 4-8. She also brings a breach of fiduciary duty claim against Guild and Cheldan.

U.S. Bank removed the case to federal court based solely on diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Dkt. No. 1 at 2. It contends that complete diversity exists because "Plaintiff is now, and was at the time the lawsuit was filed, a resident of the State of Texas" and Defendants U.S. Bank and Guild are now and were at the time the action was commenced not citizens of Texas. *Id.* at 4-5.

U.S. Bank appears to conclude (prematurely) that Cheldan is a citizen of Texas. *See id.* at 5 ("Cheldan ... appears to be a Texas limited partnership organized under the laws of Texas with its general partner ... located in Texas"). *But see Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 865 (5th Cir. 2003) ("[T]he citizenship of every partner in a limited partnership must be considerd for diversity purposes."). But it insists that Cheldan's citizenship should not be considered for the purposes of determining diversity.

U.S. Bank reasons that Ms. Adams improperly joined Cheldan in this action

because Ms. Adams has not and cannot state a claim against Cheldan. *See* Dkt. No. 18 at 4-7 (U.S. Bank alleging that Ms. Adams's claim against Cheldan fails because she has failed to state a claim and because the claim she attempts to assert is barred by the statute of limitations).

In her motion for remand, Ms. Adams maintains that complete diversity exists.

In light of the parties' dispute, the undersigned shall limit the discussion of the facts to those necessary to evaluate Cheldan's citizenship or alleged improper joinder.

Ms. Adams contends that Cheldan owes her a fiduciary duty as the "entity steering the financing of [the] newly constructed home[]" she purchased from them.

She specifically argues that Cheldan had a duty to direct her to a mortgage banker who would provide her with the best rate and term for financing and to fully disclose the financial benefits that it received from the financing arrangement. Cheldan allegedly breached this duty by steering Ms. Adams to Guild. Guild is allegedly a mortgage banker who improperly selected U.S. Bank to serve as either the mortgagee or mortgage servicer on the Loan – even though U.S. Bank allegedly had a pattern and practice of disregarding applicable law in servicing mortgage loans and even though Cheldan was allegedly charged with knowledge of this alleged pattern and practice.

Finally, Ms. Adams also asks the Court to decline to exercise jurisdiction over her claims because "Texas law claims not only predominate, but the case involves exclusively claims under Texas law, without federal claim." Dkt. No. 8 at 1.

But, as Ms. Adams appear to acknowledge, the Federal Rules of Civil Procedure

only allow courts to decline to exercise supplemental jurisdiction on this basis. *See id.* at 1 (asking the Court to "decline to exercise supplemental jurisdiction" on this basis). And, for the reasons explained below, the undersigned concludes that the Court has Section 1332 diversity jurisdiction over the claims in this action – not supplemental jurisdiction. *Cf. Premiere Network Services, Inc. v. SBC Communications, Inc.*, 440 F.3d 683, 692 (5th Cir. 2006) ("With the federal claims properly dismissed and no diversity of citizenship apparent, the district court was well within its discretion to decline supplemental jurisdiction over Premiere's remaining issues.").

### Legal Standard

Federal courts have an independent duty to examine their own subject matter jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

A defendant may remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). And a defendant may remove a case that includes a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of 28 U.S.C. § 1331) and a claim not within the Court's original or supplemental jurisdiction or that has been made nonremovable by statute, so long as the action would be removable without the inclusion of the nonremovable claim. *See id.* § 1441(c)(1). Statutes that authorize removal are meant to be strictly construed, and any doubt as to the propriety

of removal should be resolved in favor of remand. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 89 (5th Cir. 2013); *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007).

The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001). A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). "[T]he basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983) (citation and internal quotation marks omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

28 U.S.C. § 1332 creates federal subject matter jurisdiction where diversity of citizenship exists between the parties, where each plaintiff's citizenship is diverse from each defendant's citizenship, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), (b). Failure to allege adequately the basis of diversity requires remand. *See Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). If no amount of damages has been alleged in the state court petition, the defendant must

prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995). And, where diversity jurisdiction requires that the parties be "citizens of different States," 28 U.S.C. § 1332(a)(1), the Court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant, *see Corfield*, 355 F.3d at 857. "For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege [ ] the citizenship of the parties." *Howery*, 243 F.3d at 919.

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc). "In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts. If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated." *Id.* at 575. A defendant alleging that a non-diverse defendant is improperly joined has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v.*

*R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Thus, where there is no dispute or allegation of actual fraud concerning the fact that both the plaintiff and a defendant are citizens of the same state, the sole concern is whether, as a matter of law, the plaintiff can establish a valid state-law cause of action against the non-diverse defendant. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). "To establish improper joinder under the second prong, the defendant must demonstrate 'that there is no possibility of recovery' against the in-state or non-diverse defendant, 'which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or non-diverse] defendant.'" *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017) (quoting *Smallwood*, 385 F.3d at 573). "A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n.9 (internal quotation marks omitted).

But the United States Court of Appeals for the Fifth Circuit has further instructed that, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* "The burden on the removing party is to prove that the joinder of the in-state parties was improper – that is, to show that sham defendants were added to defeat jurisdiction," such that "[a] showing that the plaintiff's case is barred as to all defendants is not sufficient" and,

"[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Id.* at 575; *see also id.* at 574 (explaining that, "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit" and that, "[i]n such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper" and, "[i]n such circumstance, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such").

Ordinarily, "to determine whether an in-state or non-diverse defendant was properly joined, '[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the ... defendant.'" *Alviar*, 854 F.3d at 289 (quoting *Smallwood*, 385 F.3d at 573). This entails considering the allegations in the state-court petition at the time of removal and not any amended complaint filed post-removal in federal court. *See id.* at 290 n.1. If, however, the complaint has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006). But the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify

the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant" and that "any piercing of the pleadings should not entail substantial hearings." *Smallwood*, 385 F.3d at 573-74. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the [non-diverse] defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574. Further, "[i]n this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.*

In making the improper-joinder determination, the Court will "evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff" and "any ambiguities of state law in the plaintiff's favor" and "then examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (internal quotation marks omitted); *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 260 n.8, 264 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205–06 (5th Cir. 1983)).

The Fifth Circuit recently clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a non-diverse defendant has

been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (abrogating three *post-Smallwood* Fifth Circuit cases applying a state pleading standard instead the federal pleading standard). The "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. §135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)). The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are

considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

U.S. Bank removed this action to federal court based solely on Section 1332(a) diversity jurisdiction. Diversity jurisdiction exists where the amount in controversy

exceeds $75,000 and each plaintiff's citizenship is diverse from each defendant's citizenship. 28 U.S.C. §1332(a).

The amount in controversy has been satisfied in this action. Ms. Adams seeks to recover damages in excess of $200,000.

The parties dispute whether "each plaintiff's citizenship is diverse from each defendant's citizenship." *Id.* Ms. Adams insists that complete diversity is lacking because she and Cheldan are both Texas citizens. Dkt. No. 8 at 1. U.S. Bank counters that Cheldan's citizenship should not be taken into consideration for the purpose of determining diversity as it has been improperly joined in this action. *See* Dkt. No. 18 at 1.

 "When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper." *Smallwood*, 385 F. 3d at 576. A defendant can meet this burden by demonstrating that the plaintiff either (1) committed "actual fraud in the pleading of jurisdictional facts," or (2) is unable "to establish a cause of action against the non-diverse party in state court." *Crockett*, 436 F. 3d at 532 (internal quotation marks omitted).

There is no dispute or allegation of actual fraud concerning the pleading of jurisdictional facts. The sole concern in this case, then, is whether Ms. Adams "can survive a Rule 12(b)(6) challenge for failure to state a claim" against Cheldan. *Davidson*, 819 F.3d at 765.

U.S. Bank contends that Ms. Adams has failed to state a claim against Cheldan

for breach of fiduciary duty – the only claim asserted against Cheldan – for two reasons. It argues that Cheldan has failed to bring this claim within the time period that the statute of limitations allows. It also argues that Cheldan has failed to sufficiently state a claim to survive dismissal under Rule 12(b)(6).

I.    Cheldan is not improperly joined for its alleged failure to comply with the <u>statute of limitations.</u>

U.S. Bank argues that Ms. Adams's claim against Cheldan is barred by the statute of limitations. It appears to contend that the statute of limitations on this claim expired in October 2016 – four years after "the origination of Ms. Adams's loan, which occurred in October 2012." *See* Dkt. No. 18 at 5. U.S. Bank does not dispute that Ms. Adams had filed this lawsuit against Cheldan by October 2016. It, instead, appears to argue that the statute of limitations should not be tolled on the date that the suit was timely filed because Ms. Adams did not request citation for service on Cheldan until December 16, 2016 – about six weeks or so after it contends that the statute of limitations expired in October 2016. *See Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) (explaining that "a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation.").

But U.S. Bank's argument as to the statute of limitations is not a proper basis to find that Cheldan has been improperly joined – even if the undersigned were inclined to conclude that Ms. Adams failed to exercise the due diligence required of her.

The United States Court of Appeals for the Fifth Circuit has explained that, "when, on a motion to remand, a showing that compels a holding that there is no

-14-

reasonable basis for predicting that state law would allow Ms. Adams to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit." *Smallwood*, 385, F.3d at 574.

And, in this case, U.S. Bank's argument applies equally to both Cheldan, the allegedly non-diverse defendant, and Guild, a diverse defendant. Ms. Adams asserts a breach of fiduciary duty claim against both parties – both of which, under U.S. Bank's theory, would arise from the origination of Ms. Adams's loan in October 2012 and both of whom Ms. Adams first tried to serve on December 16, 2016.

The Court should not find Cheldan has been improperly joined on this ground.

II.   Plaintiff has failed to state a claim against Cheldan for breach of fiduciary duty.

Ms. Adams has brought only one claim against Cheldan: breach of fiduciary duty. *See* Dkt. No. 1-5 at 8-9. She specifically alleges that Cheldan steered her to finance her home with Guild, who then directed her to do so with U.S. Bank. *See id.* at 8-9. She further alleges that Cheldan was "charged with knowledge of the pattern and practice of [U.S. Bank's] disregard of applicable law in the servicing of mortgage loans." *Id.* at 10.

The issue on this motion, then, is whether Ms. Adams properly states a claim against Cheldan on this basis. Cheldan is properly joined to the claim if Ms. Adams has successfully stated a claim for breach of fiduciary duty against Cheldan.

In Texas, the elements for a claim of breach of fiduciary duty are: (1) a fiduciary relationship between Ms. Adams and Cheldan, (2) a breach by Cheldan of its fiduciary

duty to Ms. Adams, and (3) an injury to Ms. Adams or a benefit to Cheldan as a result of the breach. *See Anderton v. Cawley*, 378 S.W.3d 38,51 (Tex. App.– Dallas 2012, no pet.).

Ms. Adams fails to state a claim here because she has failed to establish the first element – that she and Cheldan are in a fiduciary relationship. *See Gergan v. Kelly*, 355 S.W.3d 223, 227 (Tex. App. – Houston [1st Dist.] 2011, no pet.).

Texas recognizes two types of fiduciary relationships. *See id*. "The first is a formal fiduciary relationship," such as "the relationship of an attorney-client, principal-agent, or trustee-beneficiary relationship." *Id*. The second is an informal fiduciary relationship – that is, a confidential relationship "where one person trusts and relies on another, whether the relation is a moral, social, domestic or purely personal one."*Id*. The Texas Supreme Court has recognized that "confidential relationships may arise not only from the technical fiduciary relationships such as attorney-client, trustee-cestui que trust, partner and partner, etc. – which as a matter of law are relationships of trust and confidence – but may arise informally from moral, social, domestic or purely personal relationships." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (1962). "The existence of the fiduciary relationship is to be determined for the actualities of the relationship between the parties involved." *Id*.

Ms. Adams cannot establish that she and Cheldan have a formal relationship that triggers a fiduciary duty. Texas does not appear to recognize a relationship between a home builder who refers home buyers to a mortgagee and a home buyer as

one of the relationships that create a fiduciary duty. *See* Dkt. No. 8 at 3 (Ms. Adams acknowledging that she has not identified a "substantial body of case law" concerning any purported fiduciary relationship between a home builder who refers a home seller to a mortgagee). After all, as U.S. Bank correctly notes, Texas law generally does not recognize a fiduciary duty between a mortgagor and mortgagee. *See* Dkt. No. 18 at 4 (citing *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990)). And the relationship between a home builder who merely refers a home buyer to a mortgagee is even more removed.

Ms. Adams also cannot establish that Cheldan owes her a fiduciary duty by virtue of their informal relationship.

"A fiduciary relationship is an extraordinary one and will not be lightly created." *Gergain*, 355 S.W.3d at 228. "[A] person is justified in placing confidence in the belief that another will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship as well as [a] personal friendship." *Id*. An informal relationship requires proof that a special relationship was created, therefore causing Ms. Adams to be guided by the judgment or advice of another. *See id.* In order for a special relationship to exist the parties must have had a relationship of trust and confidence that existed prior and apart from the agreement in the suit. *See id.* at 229.

Ms. Adams alleges that Cheldan steered her to work with Guild to finance the Property. But she fails to provide any explanation in her State Court Petition or in her

brief as to why she was "justified in placing confidence in the belief that" Cheldan would act in her best interest in the first place. She has not suggested that she allowed Cheldan to "steer" her toward a particular financing out of some long-standing personal or business relationship. *Cf. Lee v. Hasson*, 286 S.W.3d 1, 15 (Tex. App. – Houston 2007, pet. denied) ("Hasson and Lee shared a long-standing business relationship and a close personal family relationship well beyond casual friendship" and where "Lee relied on Hasson for moral, financial, and personal guidance or support. Moreover, their relationship began in 1993 and therefore predated their agreements by approximately six years."); *Flanary v. Mills*, 150 S.W.3d 785, 794 (Tex. App. – Austin 2004, pet. denied) (finding that a fiduciary relationship existed where the parties were related and had a long-standing working relationship).

Nor is there any other indication that Ms. Adams had some objective reason to believe that she would be justified in placing her confidence in Cheldan to act in her best interest. This failure is especially notable since, in her motion to remand, Ms. Adams appears to acknowledge that she has not identified case law suggesting that a fiduciary relationship between a home builder and a home owner exists. *See* Dkt. No. 7 at 3 (Ms. Adams acknowledging that "[t]here is not yet ... a substantial body of case law applying the principles within the fiduciary duties that Cheldan ... owed to Plaintiff").

The State Court Petition, at most, suggests that Ms. Adams may have had some subjective belief that she could trust Cheldan based on its status as a home builder. But, as explained above, the home builder-home buyer relationship is not a formal

relationship that independently creates a fiduciary duty. And Ms. Adams's "subjective trust and feelings of trust and confidence [are] not … enough to create a fiduciary relationship" either. *Gergain* 355 S.W.3d at 229.

Because Ms. Adams is unable to establish the first element – the existence of a fiduciary relationship between her and Cheldan – the Court should conclude that U.S. Bank has met its heavy burden of establishing that Ms. Adams is unable "to establish a cause of action against the non-diverse party in state court." *Crockett*,436 F.3d at 532.

The Court should therefore find that Cheldan has been improperly joined and that subject matter jurisdiction exists based on the complete diversity between the remaining, properly joined parties. *See Smallwood*, 385 F.3d at 575 ("In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts."). And, because once the Court determines that Cheldan was improperly joined and thereby effectively dismisses Ms. Adams's claim against Cheldan without prejudice, the Court should further order that Ms. Adams's claim against Cheldan Home, L.P. are dismissed without prejudice. *See Alviar*, 854 F.3d at 291-92.

### Recommendation

For the reasons stated herein, the Court should deny Plaintiff Barbara A. Adams's Motion to Remand Removed Action [Dkt. No. 8] and dismiss Ms. Adams's claims against Defendant Cheldan Home, L.P. without prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific findings or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, expect upon gourds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415,1417(5th Cir. 1996).

Dated: June 29, 2017

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE